UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES PREVILLE,

                Plaintiff,

      - against -

PEPSICO HOURLY EMPLOYEES
RETIREMENT PLAN,

                Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  9/22/14
```

**MEMORANDUM
OPINION & ORDER**

13 Civ. 5846 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff James Preville, a former employee of The Pepsi Bottling Group, filed

this action against the Pepsico Hourly Employees Retirement Plan pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq.,

challenging Defendants' denial of his claim for early disability retirement benefits. Defendant

contends that Plaintiff is not entitled to such benefits because his application was untimely.

        The parties have cross-moved for summary judgment. For the reasons stated

below, Defendant's motion will be granted and Preville's motion will be denied.

## BACKGROUND

### I.    <u>PLAINTIFF'S DISABILITY CLAIMS</u>

        The following facts are undisputed.[1] Between 1979 and his retirement on June

12, 2008, Preville was employed by PepsiCo, Inc. or one of its subsidiaries. (Joint Stipulation of

---

[1] The parties filed a Joint Stipulation of Facts. (Dkt. No. 24) Defendant has also submitted a
Local Rule 56.1 Statement in support of its motion (Dkt. No. 25), to which Plaintiff has not
responded. Accordingly, the factual allegations in Defendant's Local Rule 56.1 Statement are
deemed admitted. See Young v. Nassau Univ. Med. Ctr., No. 10-cv-00649(JFB)(ARL), 2011
WL 6748500, at *1 n.2 (E.D.N.Y. Dec. 22, 2011) ("Generally, a 'plaintiff['s] failure to respond
or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed

Facts ("Joint Stip.") (Dkt. No. 24) ¶ 1; Affidavit of Chad Ryan in Support of Defendant's Motion

for Summary Judgment ("Ryan Aff.") (Dkt. No. 26), Ex. A: Administrative Record ("AR") at 1)

At the time of his retirement, Preville was a participant in the Pepsi Bottling Group Long-Term

Disability Plan (the "LTD Plan"). (Joint Stip. (Dkt. No. 24) ¶ 2) The plan administrator for the

LTD Plan determined that Preville was totally disabled and therefore entitled to long-term

disability benefits under the LTD plan beginning on January 13, 2009. (Id. ¶ 3)

         In 2009, Preville was also a participant in the PBG Hourly Pension Plan (the

"Pension Plan"). (Id. ¶ 4) On June 17, 2009, Fidelity – on behalf of the plan administrator for

the Pension Plan – sent a letter to Preville informing him that he might be eligible for an

Immediate Disability pension benefit:

> This letter is to inform you that according to our records you are currently on a
> Long Term Disability (LTD) leave of absence and may be eligible for specified
> pension benefits.
>
> The PBG Hourly Pension Plan offers two options. If eligible, you may
> commence Immediate Disability benefits with a benefit commencement date
> retroactive to the first of the month following the date your LTD leave began. . . .
> If you are interested in finding out if you are eligible for an Immediate Disability
> benefit, you must contact PBG Savings and Retirement Center at Fidelity within
> 30 days of the date of this letter.
>
> You may also have the option to defer your Disability pension benefits until you
> are at least early retirement eligible. . . .
>
> If you have any questions, call the PBG Savings and Retirement Center at
> Fidelity. . . .

(Ryan Aff. (Dkt. No. 26), Ex. A: AR at 10 ("June 17, 2009 Fidelity Ltr.") (emphasis added))

Preville received Fidelity's letter on June 22, 2009, but did not contact Fidelity within thirty

days. (Joint Stip. (Dkt. No. 24) ¶¶ 6, 9)

---

constitutes an admission of those facts, and those facts are accepted as being undisputed.'"
(alteration in original) (quoting Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504
(S.D.N.Y. 2003))).

In July 2009, the Social Security Administration ("SSA") denied Preville's claim for disability benefits. (Id. ¶ 7) On July 23, 2010, however, the SSA reversed itself and approved Preville's claim retroactive to July 12, 2008. (Id. ¶ 9) In October 2011, Preville – for the first time – filed a claim for the Immediate Disability Pension. See id. ¶ 9; Ryan Aff. (Dkt. No. 26), Ex. A: AR at 15 (Oct. 6, 2011 Preville Ltr). The plan administrator denied the claim on December 20, 2011, and an administrative appeal and this Complaint followed. (Joint Stip. (Dkt. No. 24) ¶¶ 10-12)

## II.   RELEVANT PROVISIONS OF THE PENSION PLAN

Under the Pension Plan, an active eligible employee with ten years of credited service who becomes totally and permanently disabled may elect to receive an Immediate Disability Pension. Subsection 4.6(a) of the Pension Plan provides, in pertinent part:

> **(a) General Rule:** A Participant who, while actively employed, becomes Totally and Permanently Disabled after the Participant completes ten or more Years of Service is eligible for a Disability Pension pursuant to subsection (b) or (c) of this section, as described in subsection (d) or, where applicable, as elected in subsection (e). . . .[2]

(Defendant's Local Rule 56.1 Statement of Uncontested Facts ("Def. R. 56.1 Stmt.") (Dkt. No. 30) ¶ 5 (quoting AR at 4))

Subsection 4.6(e) authorizes the Plan Administrator to extend the deadline by which some Pension Plan participants may elect an Immediate Disability Pension:

> **(e) Election Available to Certain Employees:** Notwithstanding the provisions of subsection (d) ["Timing Rule"], [certain qualifying] Employees . . . can irrevocably elect to receive the Immediate Disability Pension described in subsection (b). This irrevocable election must be made in the six month period following the onset of the Participant's Total and Permanent Disability, unless the period for such an election is extended in accordance with such rules as the Plan Administrator may establish in writing.

---

[2] Subsection (b) explains the Immediate Disability Pension benefit in detail; subsection (c) addresses a "Deferred Disability Pension"; and subsection (d) sets out timing rules. None of these subsections is relevant to the issues in this case.

(Id. ¶ 6 (quoting AR at 6) (emphasis added))

Subsection 2.1(uu) of the Pension Plan provides that a participant is "Totally and

Permanently Disabled" if:

(A)     an illness or injury occurs while the Participant is actively employed by
        the Company in a Participating Employee Group;

(B)     such illness or injury does not result from chronic alcoholism, narcotics
        addiction, a self-inflicted injury, a criminal act or military service for
        which a veteran's disability pension is payable;

(C)     for purposes of Section 4.6, as a result of the injury described in paragraph
        (A), the Participant is determined to be entitled to receive long term
        disability benefits by the plan administrator of a long term disability plan
        maintained by an Employer after the expiration of any waiting period
        commencing on the date of the onset of the illness or injury described in
        paragraph (A); or the Participant is determined to be entitled to disability
        benefits under the Social Security Act by Social Security Administration
        personnel after the expiration of any waiting period commencing on the
        date of the onset of the illness or injury described in paragraph (A);

(Id. ¶ 8 (quoting AR at 7) (emphasis added))

Pursuant to its authority under subsection 4.6(e), the plan administrator for

the Pension Plan adopted the following rule:

PBG Hourly Participants may be eligible for an Immediate Disability Pension.
This benefit is only offered one time, if not accepted within 30 days of the
notification date, the participant must defer taking a benefit until age 55.

(Id. ¶ 7 (quoting Ryan Aff. (Dkt. No. 26), Ex. B:  2009 Plan Administration Manual))

The parties agree that the Pension Plan grants discretion to the plan administrator.

(Joint Stip. (Dkt. No. 24) ¶ 13)

## III.     INITIAL DENIAL OF BENEFITS

As noted above, Preville first filed a claim for the Immediate Disability Pension

benefit on October 6, 2011.  See Ryan Aff. (Dkt. No. 26), Ex. A:  AR at 15 (Oct. 6, 2011 Preville

Ltr.).  The Pension Plan determined that Preville was not eligible for an Immediate Disability

4

Pension because he did not make an election within thirty days of the plan administrator's June

17, 2009 letter.[3] In a December 20, 2011 letter to Preville, the plan administrator[4] explained why

he did not qualify for an Immediate Disability Pension:

> In order to commence an Immediate Disability benefit, Section 4.6(e) of the Plan
> document states, "This irrevocable election must be made in the six month period
> following the onset of the Participant's Total and Permanent Disability, unless the
> period for such an election is extended in accordance with such rules as the Plan
> Administrator may establish in writing." Our administrative procedures require
> that the Immediate Disability benefit must be elected and commenced within a set
> period of time after Immediate Disability election forms have been sent to the
> participant.
>
> The letter dated June 17, 2009 from the PBG Savings and Retirement Center at
> Fidelity outlined the two benefit options in the Plan and stated that you must
> contact the Retirement Center within 30 days of the date of the letter in order to
> commence the immediate disability benefit. You did not commence the described
> Immediate Disability benefit within the required time frame.
>
> Since you did not make a timely election for the Immediate Disability benefit you
> are no longer eligible for the Immediate Disability benefit and will next be
> eligible to commence a benefit at age 55 . . .

(Id. at 23-24 (Pepsico Dec. 20, 2011 Ltr.)) The December 20, 2011 letter advised Preville of his

right to appeal the denial of benefits and included instructions on how to appeal. (Id.)

## IV. PLAINTIFF'S APPEAL

On December 31, 2011, Preville appealed the initial denial of benefits. (Joint

Stip. (Dkt. No. 24) ¶ 11, Ex. D) Preville did not cite to or rely on any Pension Plan document in

making his appeal. Instead, he attached Appendix B and Appendix C from his union's collective

bargaining agreement. Appendix B states, in relevant part:

---

[3] The Plan Administrator determined that Preville met the other eligibility requirements. (Ryan
Aff. (Dkt. No. 26), Ex. A: AR at 23-24 (Pepsico Dec. 20, 2011 Ltr.))

[4] As of February 26, 2010, PepsiCo, Inc. acquired The Pepsi Bottling Group, Inc. and assumed
sponsorship of the PBG Hourly Pension Plan. Effective June 14, 2010, PepsiCo, Inc. adopted an
amendment merging the PBG Hourly Pension Plan into the PepsiCo Hourly Retirement Plan.
(Ryan Aff. (Dkt. No. 26) ¶ 3)

5

> Disability Retirement:  If you are vested in the Plan and become permanently and totally disabled, the Plan begins paying you monthly benefits 6 months after the date you became disabled, regardless of your age.  The formula is exactly the same:  your years of service when you became disabled times $57.

(Ryan Aff. (Dkt. No. 26), Ex. A:  AR at 28)  Appendix C addresses, inter alia, the calculation of

service credit and the effect of Social Security benefits on Pension Plan benefits.  (Id. at 29)

On April 6, 2012, the plan administrator for the Pension Plan sent a letter to

Preville informing him that his appeal had been denied.  (Joint Stip. (Dkt. No. 24) ¶ 12, Ex. E)

The plan administrator explained that

> Section 4.6 of the Plan describes the requirements for a disability pension and 4.6(e) of the Plan sets forth the requirements for commencing an immediate disability pension benefit.  Section 4.6(e) of the Plan document provides that eligible participants may irrevocably elect to receive an immediate disability pension and states, in pertinent part:  "This irrevocable election must be made in the six month period following the onset of the Participant's Total and Permanent Disability. . . ."
>
> * * * *
>
> You became "Totally and Permanently Disabled" for purposes of Section 4.6 of the Plan on January 13, 2009, when Sedgwick determined that you were eligible to receive LTD benefits under the Company's LTD plan.  The timing of your Social Security disability claim notification is not relevant to the date that you first met the Plan's definition of Totally and Permanently Disabled.  Although Sedgwick is not responsible for determining whether someone is Totally and Permanently Disabled under the terms of the Plan, they are responsible for determining eligibility for disability benefits under the terms of the LTD Plan.  In addition to the requirement that an eligible participant make an election for an immediate disability pension benefit within six months of becoming Totally and Permanently Disabled, the Plan's administrative procedures require that a participant must elect such benefits within thirty days of notification from Fidelity.  Since you did not contact Fidelity within the required 30 day period and you did not make an election within six (6) months of becoming Totally and Permanently Disabled, you are not eligible for the immediate disability pension benefit.

(Id., Ex. E (Pepsico Apr. 6, 2012 Ltr.) at 2-3)

## V.     PROCEDURAL HISTORY

Plaintiff filed the instant lawsuit on July 23, 2013, in the Eastern District of
Michigan. (Cmplt. (Dkt. No. 1)) On August 19, 2013, the case was transferred to this District.
(Dkt. No. 5) The parties then filed cross-motions for summary judgment. (Dkt. Nos. 23-35)

### DISCUSSION

## I.     SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the moving party shows that "there is no
genuine dispute as to any material fact" and that that party is "entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment
purposes where the evidence is such that a reasonable jury could decide in the non-movant's
favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner,
480 F.3d 140, 145 (2d Cir. 2007)). "As to materiality, the substantive law will identify which
facts are material. Only disputes over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary judgment. Factual disputes that are
irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).

In deciding a summary judgment motion, this Court "resolve[s] all ambiguities,
and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing
summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (citations
omitted). "'[A] party may not rely on mere speculation or conjecture as to the true nature of the
facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials
. . . cannot by themselves create a genuine issue of material fact where none would otherwise
exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68

7

F.3d 1451, 1456 (2d Cir. 1995)). Instead, the non-moving party must "'offer some hard evidence showing that its version of the events is not wholly fanciful.'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

"It is appropriate for courts reviewing a challenge of denial of benefits under ERISA to do so on a motion for summary judgment, which 'provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record.'" Ramsteck v. Aetna Life Ins. Co., No. 08-CV-0012(JFB)(ETB), 2009 WL 1796999, *6 (E.D.N.Y. June 24, 2009) (quoting Gannon v. Aetna Life Ins. Co., No. 05 Civ. 2160(JGK), 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007)).

## II.   STANDARD OF REVIEW

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Krauss v. Oxford Health Plans, Inc.,

517 F.3d 614, 622 (2d Cir. 2008) (same). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." Krauss, 517 F.3d at 622 (citing Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002)).

"The plan administrator bears the burden of proving that the deferential standard of review applies." Fay, 287 F.3d at 104 (citing Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999)). "Ambiguities are construed in favor of the plan beneficiary." Krauss, 517 F.3d at 622 (citing Fay, 287 F.3d at 104 ("Although express use of the terms 'deference' and 'discretion' in the plan is not necessary to avoid a de novo standard of review, this Court will construe ambiguities in the plan's language against the insurer.")).

"Under the arbitrary and capricious standard of review, [a court] may overturn an administrator's decision to deny ERISA benefits 'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow[;] thus[,] [the court is] not free to substitute [its] own judgment for that of [the administrator] as if [the court] were considering the issue of eligibility anew.'" Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 83-84 (2d Cir. 2009) (alterations in original) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)).

Here, the parties agree that the Pension Plan grants discretion to the plan administrator. (Joint Stip. (Dkt. No. 24) ¶ 13) Accordingly, this Court "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Hobson, 574 F.3d at 82.

## III.   THE PLAN ADMINISTRATOR'S DECISION IS NOT ARBITRARY AND CAPRICIOUS

Defendant contends that the plan administrator's "determination that Preville did not make a timely application for Immediate Disability Pension benefits was not arbitrary and

capricious. The clear language of the Pension Plan, as supplemented by the Plan Administrator's rule, compelled the determination." (Def. Br. (Dkt. No. 27) at 12)

      As discussed above, the Pension Plan provides at subsection 4.6(e) that an "irrevocable election must be made in the six month period following <u>the onset</u> of the Participant's Total and Permanent Disability, <u>unless the period for such an election is extended in accordance with such rules as the Plan Administrator may establish in writing</u>." (Def. R. 56.1 Stmt. (Dkt. No. 30) ¶ 6 (citing AR at 6) (emphasis added)) Subsection 2.1(uu) of the Pension Plan, which defines the term "Totally and Permanently Disabled," explains that the onset of a participant's Total and Permanent Disability occurs when he suffers an injury or illness while actively employed that ultimately results in either (1) his being entitled to receive long-term disability benefits under the LTD Plan or (2) being determined to be disabled under the Social Security Act. (<u>Id.</u> ¶ 8 (citing AR at 7)) It is undisputed that the administrator of the LTD Plan determined that Preville was entitled to receive benefits under the LTD Plan beginning January 13, 2009. (Joint Stip. (Dkt. No. 24) ¶ 3) Preville, however, did not elect to receive an Immediate Disability Pension within six months of January 13, 2009. Indeed, he waited until October 2011 – more than two years after the onset of his disability – to file his claim. Preville's claim is therefore untimely under the express terms of the Plan.

      Subsection 4.6(e) provides that the plan administrator may extend the election period by written rule. (Def. R. 56.1 Stmt. (Dkt. No. 30) ¶ 6 (citing AR at 6)) Here, the plan administrator adopted a rule that permits eligible employees to elect to receive an Immediate Disability Pension within thirty days of written notice. (<u>Id.</u> ¶ 7 (citing Ryan Aff. (Dkt. No. 26), Ex. B: Plan Administration Manual)) Pursuant to this rule, the plan administrator mailed notice to Preville by letter dated June 17, 2009. The letter states, in relevant part,

> If eligible, you may commence Immediate Disability benefits with a benefit commencement date retroactive to the first of the month following the date your LTD leave began. . . . If you are interested in finding out if you are eligible for an Immediate Disability benefit, you must contact PBG Savings and Retirement Center at Fidelity within 30 days of the date of this letter. . . .

(Ryan Aff. (Dkt. No. 26), Ex. A: AR at 10 ("June 17, 2009 Fidelity Ltr.") (emphasis added))

Although Preville acknowledges that he received this letter on June 22, 2009 (Joint Stip. (Dkt. No. 24) ¶ 6), he did not contact Fidelity or make an election within the thirty day period.

In sum, it is apparent from the record that the plan administrator's decision to deny Preville's claim for an Immediate Disability Pension is neither arbitrary nor capricious. To the contrary, that decision was compelled by both the language of the Pension Plan and the 30-day rule adopted by the plan administrator.

Preville argues, however, that the Pension Plan's language is ambiguous as to when a plan participant is required to make an election. (Plaintiff's Brief in Support of Motion for Summary Judgment ("Pltf. Br.") (Dkt. No. 32) at 2) In support, Preville cites a provision of the Pension Plan's 2009 Pension Guidelines which states:

> In order to be eligible for a disability retirement benefit, you must:
>
> - Have at least 10 years of service; and
> - Be determined to be **Totally and Permanently Disabled** and eligible to receive benefits under a Company sponsored LTD plan or by the Social Security Administration.

(Ryan Aff. (Dkt. No. 26), Ex. A: AR at 17 (emphasis in original)) According to Preville,

> It is clear that an employee would have to be totally and permanently disabled. However, it also requires that an employee be eligible for LTD benefits *OR* [be] declared disabled by the Social Security Administration (SSA). Therefore, someone could qualify by having:
>
> 1) 10 years of service and eligible for LTD benefits; *or*
> 2) 10 years of service and approval from the Social Security Administration.

11

(Pltf. Br. (Dkt. No. 32) at 3 (emphasis in original))  Accordingly, the gist of Preville's argument is that the Pension Plan permits him to make an election after either the LTD Plan or the SSA determines that he is disabled.

Assuming arguendo that Preville's interpretation of the relevant Pension Plan provisions is correct, his claim still fails.  Here, the SSA determined that Plaintiff was disabled on July 23, 2010.  (Joint Stip. (Dkt. No. 24) at 2)  The unambiguous language of subsection 4.6(e) provides that an "irrevocable election must be made in the six month period following the onset of the Participant's Total and Permanent Disability, . . ."  (Def. R. 56.1 Stmt. ¶ 6 (citing AR at 6) (emphasis added))  Preville did not file a claim until October 6, 2011, however.  (Joint Stip. (Dkt. No. 24) ¶ 9, Ex. B)  Because more than a year passed between the time that Preville learned of the SSA's determination and the filing of his claim for an Immediate Disability Pension, the plan administrator's decision was not incorrect, let alone arbitrary and capricious.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 23, 31) and to close this case.

Dated: New York, New York
      September 22, 2014

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge